Thank you, Judge. May it please the Court, my name is Mark Caldwell. I'm representing Ms. Shafer in this Social Security case this morning. As a preliminary matter, I would like to request the Court's permission to reserve two minutes of my time for rebuttal. You may do so. The Court is well aware of the facts of this case, so let me jump right to the issues. There are two issues that I believe should be dispositive of this case, and those are the issues of acceptance of a matter of law of the opinion of the treating physician, Butler, or the claimant's testimony, Shafer. Butler's testimony led to V.E., excuse me, vocational expert testimony that a person so limited could not work. Shafer's testimony is facially inconsistent with the Commissioner's requirement under Ruling 96A.P. that a person be able to sustain work on a regular and continuing basis. Having said that, while I think those should be dispositive issues, if they are not, I think there's one issue that is indispensable, and that is consideration of Dr. Harris's testimony, or another way to put it, lack of consideration. Roberts, on hyperventilation. Yes. Yes, Your Honor. Dr. Harris, as you know, was the medical expert who testified at the hearing and gave what I thought was very insightful and helpful testimony. There are two problems with the way the ALJ treated Dr. Harris's testimony. One, on the critical issue of hyperventilation syndrome leading to metabolic alkalidosis, and these individuals are very fatigued, the ALJ didn't mention that at all. If you read the ALJ's decision, you would have thought that testimony didn't even occur. The second problem with the ALJ's treatment of Dr. Harris's testimony is that he relied on a characterization of Dr. Harris's testimony, if I can put it that way, that didn't exist. He rejected the opinion of Dr. Butler, the treating physician, based upon the ALJ's opinion, that Dr. Harris said that Butler's opinion wasn't supported by the record. And the fact of the matter is Dr. Harris just flat out didn't give that testimony. So the indispensable part of this case, if I can put it that way, is that the ALJ ignored crucial parts of Dr. Harris's testimony and relied on Dr. Harris's testimony that didn't exist. And that's why I think the decision cannot be found to be free of legal error. Now, talking about Dr. Butler's testimony itself, there are several, I call it testimony, actually report, there are several problems with that. I think the ALJ made, if I can say so, some intemperate remarks at hearing that were frank speculation. He said, you know, sometimes these guys just think they're getting somebody out of jury duty and it doesn't look like he gave very much thought to this, and where does that come from? He didn't call Dr. Butler and ask him any of that. He just presupposed it. And, of course, that sort of speculation could lead to rejecting any treating physician's opinion. And so I think that is unfair. The other part of the ALJ's analysis of Dr. Butler's testimony was the ALJ's opinion, the ALJ, not a medical expert, that Dr. Butler's opinion was not supported by his treating notes. Let's be a little bit more charitable of the ALJ. Dr. Butler's report, as he's called, is on a preprinted form by the law offices of Caldwell and Oberg. Correct. And in it, the only thing that he writes other than check off is his name. There's no relation. There's no narrative. There's no analysis. The questions are framed by the attorneys representing the person seeking the benefits. That is correct. And they're doing their job for their client. But there's no ‑‑ I would submit there's no pretense that this is a full and dispassionate examination. It's trying to establish those things that they want to have established by Dr. Butler. There's nothing wrong with that. But to say that the ALJ can't take a look at this and arch an eyebrow is to take away from the ALJ any discretion as to fact finding, isn't it? Certainly I don't mean to take away the ALJ's discretion. And if the ALJ had said what you just said, perhaps I could have responded to that at the hearing, but that isn't the statement by the ALJ that I'm pointing to. The statement by the ALJ was this business about, well, I don't think they're giving it much thought and I think they're just trying to get somebody out of jury duty, et cetera. And I can only respond to the arguments that I hear at the hearing. Now, as to the check off form, if I can just address that for a minute, this Court has held several times that check off forms are a bit of a problem, and I understand that. But there are practicalities about representing these people in a hearing. You can't get treating doctors to do single-spaced, five-page reports in these kinds of administrative hearings. You do have to look at what are in the doctor's treatment records. Now, in that respect, I know we're not looking at the district court's decision, but let me just mention it. In that respect, the district court said, well, the only evidence of fatigue is the claimant's statement at the hearing. And that's just not true. I counted six times where the treating physicians made observations and documented the claimant's fatigue. Briefly, at Excerpts 7, 9, 20, 26, 28, and 29. So there is information in the treating physician's opinion that does correlate with both Dr. Butler's opinion and with Dr. Harris's testimony regarding fatigue and the debilitating effect that that has. The other part that I think the ALJ heard and I think the district court heard in picking up on it is the statement that Dr. Butler's opinion was only based on his treatment notes. That isn't correct. And it was interesting, because at the hearing, the ALJ and I had a discussion. I was trial counsel. And I said to the ALJ, Judge, you know, treatment records are for treatment. Treatment records aren't supposed to be residual functional capacity assessments. And the ALJ's response was, agreed. So then to turn around and denigrate Dr. Butler's opinion based upon the fact that there weren't assessments in the treatment notes seems strange to me. The other thing that I think the district court missed out on is if you look at all of Dr. Nagamoto's records, he was the pulmonologist, he was referred by Dr. Butler. And his reports, at least the later ones, were addressed to Dr. Butler. So Dr. Butler had that information available to him, too. Let me jump to Schaefer's testimony quickly, if I may. Schaefer's testimony was denigrated based upon the ALJ's opinion. It wasn't supported by the medical evidence. I've already addressed that. It was based upon Schaefer's activities of daily living. But the Commissioner requires that an assessment be made on a regular and continuing basis. And there was also speculation that because she had retired, somehow that impacted upon the veracity of her medical symptoms. I think that's speculation, and I don't think that's accurate either. As to the ALJ's assessment of residual functional capacity, the district court said that was harmless error. And I hardly see why. The district court did say something that I thought was strange. It said, well, the Commissioner does require a function-by-function assessment, but there's no requirement that it be in the ALJ's written decision. Well, if it isn't in the ALJ's written decision, how are we supposed to know what it is? We can't guess what's in the ALJ's mind. I do say I'm up on my rebuttal time, and unless the Court has other questions, I'll reserve that. You may reserve. Thank you, counsel. Good morning, Your Honors. My name is Theophilus Regans. Mr. Regans. I'm here to represent the Commissioner, Jordan Barnhart. The Commissioner believes that substantial evidence supports the ALJ's determination that the claimant here did not carry her burden to establish that her impairments prevented her from performing the modest requirements of her past relevant work, as an audit clerk. I have an outline here, but I want to respond very quickly to a couple of arguments made by counsel and his arguments. Counsel referred to the ALJ's – Well, Dr. Harris was a key witness here, and there's nothing in the report, the ALJ's opinion, which factored in why he believed or didn't believe the position by Dr. Harris. I think actually the ALJ adopted the opinion of Dr. Harris and gave Dr. Harris's opinion controlling weight in this matter. And the – Can you read in the ALJ's opinion where he adopted that? I thought he rejected his testimony or his observations on hyperventilation. He didn't give any reason, but he just – there's no analysis, but I – The ALJ's decision does state that he gives controlling weight to Dr. Harris's opinion. Thank you, counsel. I think – well, the position that we're taking here is that even if we accept Dr. Harris's – what we consider unsubstantiated speculation that there was a hyperventilation syndrome, that Dr. Harris nonetheless said if he was accepting that as an impairment, that this person, that claimant, Mrs. Schaefer, could actually perform sedentary work. So even if we assume that his speculative diagnosis was in fact correct, even with that diagnosis, it doesn't preclude her from doing her past relevant work. That was Dr. Harris's testimony. She could do sedentary work, which is an extremely restrictive level of exertion. So with regards to rejecting Dr. Harris's testimony at the hearing, the ALJ was not rejecting it, so he wasn't – there was no need for him to provide reasons for doing so. And the point that I was trying to get back to was counsel's statement about the – How about the fatigue issue that's not – that's not mentioned? The fatigue issue, the ALJ did not – I don't believe that the ALJ rejected the fatigue in this case. I believe that that was accommodated for in the sedentary RFC. The ALJ adopted Dr. Harris's testimony. Dr. Harris accepted the fact that this claimant had some fatigue. The ALJ, in assigning a sedentary RFC, has accepted that this claimant perhaps has some fatigue as a result of her impairments. The thing that the ALJ rejected was the extent of the fatigue alleged toward the end of this case. Claimant has stated that she could – that she had to lay down for two or three hours every day. There's no substantiation for that. There's no testimony about that. There is a reference about six times about fatigue, as counsel has said, but never has claimant said in those comments to her treating physicians that she had – that the fatigue was so severe that she had to rest for two to three hours. I think the ALJ in his credibility finding was rejecting the extremity of her claim of fatigue, not the fact that she might have actually suffered from some fatigue. RFC assessment of sedentary allows for a claimant to – a worker to sit for most of the time for most of the day. And in this particular case, when we're talking – when we're looking at the credibility analysis, the reference to the fact that she retired is important with regard – it connects with this whole question of fatigue. There is no allegation. There's no evidence that substantiates an abrupt deterioration of her condition. She had this condition for at least ten years, yet she was able to work with it, with the asthma attacks and with the alleged fatigue. She worked up until she was retirement age. And at that point, because of – apparently because of the challenges that were created by her impairments, she retired. Pardon me, counsel. You said that there was nothing in the record regarding her necessity to take two or three hours a day to lie down. I thought that the vocational expert, Nathan Dean, testified – oh, that was a hypothetical. That's a hypothetical question. A hypothetical on an assumption. Was there any objection to the assumption, the question on the grounds that there was no evidence in the record upon which the assumption could be made? That's the position that we're taking at this point, that there was nothing to substantiate her claim. No, but you didn't take it then. Pardon me? You didn't take it then. Nobody voiced an objection to the hypothetical question if we assume the claimant's testimony that we just heard specifically the need to lay down two or three hours out of the day because of fatigue. Did she testify that she needed to lay down two or three hours out of fatigue? She testified to that, prompting from counsel. And that's another interesting part of this case from my perspective. When the claimant filed her application, she indicated that she was unable to continue doing her past relevant work because of pain, because she had to get up and stretch, because she had to use a footstool, and because she coughed and she disturbed her coworkers. Not until prompted by counsel at the hearing did she indicate that she had to take these two or three-hour breaks as a result of this alleged fatigue that had become so extreme. There's nothing that I have found in the record that indicates that the fatigue was that extreme. And her treated physician, Dr. Butler, indicated that it was from the lack of exercise. And one of his prescriptions was for her to do more exercise. I have a question here at ER 91, and there's no question she was prompted by counsel, but there's no objection that the question was leading. So then it's in the record. It's in the record. Now, I'm stepping off of my knowledge base here, but from my experience in working with these cases, the ALJs usually don't object to the counsel's questions if they're not substantiated by the evidence, particularly with regard to hypothetical. I think this case law that says the ALJ does not have to. Wasn't the commissioner representative at this hearing? Commissioners are not representative, no. It's the ALJ. The only plaintiff's counsel is there. How do you square the ALJ's rejection of Dr. Butler's view of the claimant's limitations? Because according to the ALJ, according to Dr. Harris's report, they were not in Dr. Butler's ‑‑ they were not consistent with Dr. Butler's treatment, whereas that is not factual. That's just not so. She was treated, she had complaints, and he actually treated her for those limitations. He actually treated her, but what the ALJ was noting was that the treatments that he gave her were not consistent with the extent of the assigned symptoms by Dr. Butler with the last report that he submitted to the ALJ. For example, he treated her for pain, but the treatment that he offered her was Tylenol PM for her to sleep well at night. It wasn't an epidural injection. It wasn't narcotic medication. There was some discussion of narcotic medication, pain medication, but plaintiff rejected the notion of even taking that at the later part of her impairment treatment process. And with regards to the function by function analysis, I'd just like to point out that at the hearing, counsel and the ALJ had a discussion, and that discussion was about the absence of objective findings to support the severity of the pain that was alleged by Dr. Butler. And plaintiff's counsel conceded that there were minimal findings, and actually indicated that this case really revolves around two basic things, claimant's credibility and her fatigue. The ALJ has accepted Dr. Harris' testimony, and implicit in that testimony is an acceptance of Dr. Harris' testimony is an acceptance of her fatigue. The only thing that was rejected was the extent. And so there really wasn't, plaintiff's counsel even agreed that it would be pointless to do a hypothetical. The obvious answer would be if a person had to stop and rest for two to three hours because of fatigue, they wouldn't be able to work. So it was pointless for the ALJ to do that kind of analysis. Roberts. Thank you, counsel. You have some reserved time, Mr. Colwell. Thank you, Judge. Very little here. Let me take the Commissioner's side on one thing. There's no need to object to the question at the hearing. And Mr. Riggins was right. The Commissioner isn't represented, so I'm not taking that position. But let's look at this so-called controlling weight given to Dr. Harris' opinion. That's not the problem. The problem is, is that controlling weight was only given to some of his opinion, and other parts of his opinion, as you said he was a crucial witness, were completely ignored. And that's the legal error here. I think Mr. Riggins is saying that it's a matter of degree. He concedes that controlling weight was given, but that one could discount, let's say, the extent of the fatigue. Well, if the ALJ wanted to discount it, he could certainly do that. But he'd have to give specific and legitimate reasons for doing so. And as I said in my earlier argument, if you read the ALJ's decision, you'd think Dr. Harris never gave that testimony at all. And that's the legal error. This business about the retirement, I cited Cox, which is an Eighth Circuit case. I was researching last night in a case that's hard to pronounce, Tysliki, T-Y-L-I-T-Z-K-I. This Court noted that a person had retired and found that that wasn't a basis for discounting their testimony. And the only other point I want to make, and I guess this is sort of defending myself, yes, I sent the form to Dr. Butler, and yes, I asked the claimant questions at the hearing. And my only response to that can be, that's my job. I'm supposed to elicit evidence in support of a claim, and the Commissioner requires me to do that in the regulations. So to complete my argument here, I still want to come back to Dr. Butler and Dr. Schaefer and urge this Court to remand for payment of benefits. I cited the Moisa, M-O-I-S-A, case as a supplemental authority. Since then, this Court has decided the Beneke case, and I think those should be guidance in this matter. Thank you, counsel. Thank you, Judge. The case just argued will be submitted for decision. And we will now hear oral argument in Birch v. Barnhart. Thank you.
judges: O'scannlain, Cowen, Bea